**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SATURNINO Z. VAZQUEZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No.  1:14-cv-04233** |
| | ) | |
| **FERRARA CANDY COMPANY and** | ) | **Magistrate Judge Valdez** |
| **THOMAS P. POLKE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION**
**TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION**
**AND JUDICIAL NOTICE UNDER THE FAIR LABOR STANDARDS ACT**

Plaintiff, Saturnino Vazquez ("Plaintiff") seeks conditional certification and to issue

notice under Section 216(b) of the Fair Labor Standards Act ("FLSA") to a class of a thousand

current and former hourly employees in nine different departments at Ferrara Candy Company's

three facilities in Bellwood, Bolingbrook and Forest Park.  Plaintiff seeks conditional

certification based solely on his personal experience, with no supportive evidence or knowledge

of the practices of any other employee.  Plaintiff maintains that the fifteen minutes that he was

paid for changing into a shirt and pants each day was not sufficient to compensate him for all his

changing time.  Aside from being factually incorrect in nearly all of his assertions, even giving

him the benefit of the doubt and after 18 months of discovery, Plaintiff has presented no

evidence of the changing habits of any other employee or the work performed by them.

I.     **FACTS**

   A.     **Ferrara Candy Company**

Ferrara Candy Company manufactures confectionary/candy products.  It operates three

facilities in Illinois: Forest Park, Bellwood and Bolingbrook (Ex. A, Castejon Dep. p. 14; lns. 8-

12).

### 1. *The Forest Park, Bolingbrook and Bellwood Facilities*

#### a. Forest Park

Ferrara's Forest Park location is a five-story facility (including a basement), where employees are divided among the following departments: packaging, panning, starch, quality control/quality assurance, color and flavoring, shipping, warehousing and maintenance operations. (Castejon Dep. p. 52, lns. 8-13; Ex. B, Castejon Dec. par.2) About 585 persons currently work at Forest Park. (Castejon Dep. p. 17, lns. 3-9) Forest Park has two first floor male and female locker rooms and a second floor male locker room. (Id. at 66, lns. 14-20)

#### b. Bolingbrook

Ferrara's Bolingbrook facility does not have any manufacturing operations; it is only a packaging center where most employees do not even wear a company provided pant or shirt. They only wear a frock, which is a paper cover that is worn over street clothes. (Castejon Dep. at 61, lns. 4-16) About 150 persons currently work at Bolingbrook. (Id. at 16, lns. 10-12, 17, lns. 7-19) Bolingbrook is a single story facility and does not even have locker rooms for changing. (Castejon Dec. par. 3) Plaintiff has never worked at the Bolingbrook facility, so he has no knowledge of any activity at that facility, including the work or any alleged changing habits of employees there.

#### c. Bellwood Facility

Ferrara's Bellwood facility is divided among the following department/operations: packaging, starch, quality control/quality assurance and maintenance functions. (Castejon Dep. at 62, lns. 11-24; 63) The Bellwood employees wear shirts and pants similar to Forest Park employees in similar positions. About 300-350 persons currently work at Bellwood. Bellwood is a single story facility with one locker room each for male and female employees. (Castejon

Dec. par. 4)  Plaintiff has never worked at Bellwood, and has no knowledge of any activity there, including the work or changing habits of employees.   (Castejon Dep. p. 16, lns. 15-20, 20-24)

### 2.    *Compensation for Changing Clothes*

Ferrara provides production and maintenance employees at the Forest Park and Bellwood facilities with a shirt and pants that must be worn when on the production floor.  The shirt contains snaps rather than buttons.  Employees must also wear rubber-soled shoes, but there are no other restrictions on the shoe and most employees wear their own shoes.  Shirts and pants are placed on hangers in all-purpose lockers, cleaned by Ferrara and typically delivered every week.  Ferrara employees have the option to store a week's work of clothes in their personal locker. (Castejon Dec. at par. 6)

It is undisputed that, in addition to compensation for hours worked, Ferrara pays its employees a minimum of fifteen additional minutes of time each day to compensate them for the time it takes to change in and out of the aforementioned shirt and pants.  (Castejon Dep. at 67, lns. 5-14; 114, lns. 10-24; and 115, lns. 1-9)  Aside from Plaintiff, no employee has claimed it took longer than fifteen minutes to change in and out of clothes.  (Id. at 15, lns. 6-9)

If employees at Ferrara believe they have performed any work for which they have not been paid, they can notify human resources who will verify what time was worked and will make adjustments so employees will be paid.  (Id. at 27, lns. 16-24; 28, ln. 11; 40, lns. 23-24; 42, lns. 1-2)  There is no evidence in the record that Plaintiff ever pursued this practice to the extent he ever claimed he was not paid for time worked.  While Plaintiff has never pursued this practice, it is not unusual for Ferrara employees at any facility to request, and receive, a correction for hours they claim to have worked, but were not paid.  (Castejon Dec. par. 5)

### B.     The Plaintiff and His Allegations

Plaintiff is a former maintenance employee of Ferrara who resigned in June 2014. Plaintiff has only worked at Ferrara's Forest Park location. (Ex. C, Plaintiff Dep. p. 15, lns. 20-22)  Plaintiff's schedule was primarily 6:00 a.m. to 4:30 p.m. (Id. at 22, lns. 9-16)  Plaintiff does not know how many employees worked in his own department, and cannot remember the name of a single co-worker in his department. (Id. at 23, lns. 10-18)

#### 1.     Plaintiff's Morning Routine

Plaintiff was scheduled to begin at 6:00 a.m., but he voluntarily chose to arrive thirty to forty minutes early. (Id. at 22, lns. 18-20; Dkt. No. 35-6, Plaintiff's Ex. 5, Ferrara 008-009 (timesheets))  Plaintiff was not told he had to arrive early each day, only that he had to be ready to start work at 6:00 a.m. (Plaintiff Dep. at 36, lns. 19-24; 37, lns. 1-5)  Upon arriving at work, Plaintiff would clock in (before 6:00 a.m.) at the time clock located near the employee entrance. (Id. at p. 25)  After clocking in, Plaintiff would immediately walk to the cafeteria on the second floor to drop off his lunch and sometimes eat. (Id. at 27, lns. 7-20)  It took about three minutes for Plaintiff to travel from the first floor (where the time clock is located) to the second floor. (Id. at 69- lns. 15-20)  Once Plaintiff got to the cafeteria to drop off his lunch, he would spend five minutes in the cafeteria. (Id. at 27-lns.21-24, 28-lns. 1-2) On other occasions, Plaintiff had coffee and bread in the cafeteria, a free benefit that Ferrara provides to employees. (Id. at 27, lns. 2-6, 21-24; 28, lns. 1-2)  Plaintiff admits that he did not perform work in the cafeteria.

After leaving the cafeteria, Plaintiff walked through the plant down the stairs to the first floor, picked up his a shirt and pants on the first floor and then walked back up the stairs to change his clothes in the second floor locker room. (Id. at 28, lns 14-24; 29, lns. 1-7)  This took him several additional minutes given his testimony it took him six minutes to walk up two flights, from the basement to the second floor locker room. (Id. at 70, lns. 7-14)  According to

4

Plaintiff, he would spend a total of fifteen to twenty minutes each morning in the locker room.
Plaintiff would arrive early, because in his own words, he wanted "to take [his] time." (Id. at 33,
lns. 7-10) Because Plaintiff could have kept a week's worth of shirts and pants in his locker, it
was his decision to make an extra trip up and down the stairs to pick up new clothes each day.
(Castejon Dec. par. 6)

Plaintiff wore a shirt and pants provided by Ferrara and rubber soled shoes that were his
personal shoes. (Castejon Dep. at 51, Ins. 16-21; 55, Ins. 20-24; Plaintiff Dep. at 34, lns. 4-12)
Plaintiff's daily routine included spending time changing his socks, which Ferrara did not require
and was, again, his personal preference. (Id. at 34, lns. 2-6) Similarly, Plaintiff also chose to
remove his personal t-shirt each morning, but was not required to do so for his job or to change
into his Ferrara shirt. (Id. at 48, lns. 22-24; 49, lns. 1-7) As part of his 15-20 minute changing
ritual, no other person was in the locker room. (Id. at 41, lns. 1-19) According to Plaintiff, his
work shirt had five-to-six snaps (Id. at 48, lns. 22-24; 53, lns. 1-6) and it would take Plaintiff five
minutes just to change his shirt. (Id. at 48, lns. 16-21) It would take Plaintiff another five
minutes to change his shoes and three-to-four minutes to change his pants. (Id. at 55, lns. 7-11)
Plaintiff sometimes used the restroom while he was in the locker room. (Id. at 35, lns. 1-6)

When asked about other employees similarly situated to Plaintiff, he recalled only one
"person," a female, whose name he could not remember. Plaintiff could only recall that this
female did not clock in until 6:00 a.m. and Plaintiff admits that he does not know how long it
took her or any other employee to change. (Id. at 23, 24, lns. 1-13; 42, lns. 1-8; 78, lns. 5-8)

After leaving the locker room, Plaintiff claims he would go down to the basement to grab
his bucket and mop, stop on the first floor to clean his mop and start his assignment in the
restroom also located on the first floor by 6:00 a.m. (Id. at 37, lns. 6-24; 38; 39, lns. 1-9)

5

### 2. *Plaintiff's End-of-Shift Routine*

In Plaintiff's case, based on his testimony, he received paid time at the end of his shift far *in excess* of fifteen minutes for changing out of his clothes. First, according to Plaintiff's time records, Plaintiff regularly clocked out at 4:23 p.m. (Ex. 5 to Plaintiff's Motion at Ferrara 008-010) Plaintiff also testified it took him three minutes to get from the locker room to the time clock. (Plaintiff Dep. p. 69, lns. 15-20) It took Plaintiff about the same amount of time to change his shirt, pants and shoes at the end of the day as it did at the beginning of the day (Id. at 57, 58), with the exception of saving approximately ten seconds changing his pants and shirt. (Id. at 57, lns. 5-22) Plaintiff's end-of-shift routine also included changing back into his personal t-shirt and washing his hands. (Id. at 57, lns. 5-10; 58, lns. 19-24) Based on Plaintiff's own timeline, at the end of the day, he was paid for thirteen-to-fourteen minutes that he spent in the locker room changing. According to Plaintiff's testimony, he would leave the locker room at approximately 4:20 p.m. in order to punch out at 4:23 p.m.[1] If Plaintiff spent a total of fourteen-to-fifteen minutes changing and washing before leaving at 4:20 to head to the time clock, he had to arrive at the locker room no later than 4:06 p.m.

Plaintiff also testified, inconsistent with his own time frames explained above, that he headed to the locker room somewhere between 4:10 p.m. and 4:15 p.m. (Id. at 65, lns. 7-24) Plaintiff claims that he left his last assignment at 4:10 p.m. on the second floor. (Id. at 66, lns. 15-19) He would then walk back to the basement to bring the bucket and mop to the maintenance room. (Id. at 67, lns. 1-10) According to Plaintiff, it took him five (5) or six (6) minutes just to get from the first floor to the basement. (Id. at 69, lns. 21-24; 70, lns. 1-6)

---

[1]    On occasion Plaintiff would also have to wait an additional minute standing in line to punch out, but waiting in line to punch out on the time clock is not compensable as a matter of law. (Id. at 71, lns. 2-11); see 29 C.F.R. §§ 790.7(g) and 790.8(c).

Plaintiff then walked back up from the basement to the second floor locker room, which would take another six (6) minutes. (Id. at 70, lns. 7-14)

Again, using Plaintiff's time frames, it follows that if Plaintiff left his work assignment at 4:10 each day to return to the locker room and he took somewhere between eleven (11) and twelve (12) minutes to ambulate down to the basement and then back up to the second floor locker room, there would virtually be no time for Plaintiff to change in order for him to head to the time clock at 4:20 p.m. Because the 4:23 punch out times are not in dispute, and Plaintiff testified it takes him three (3) minutes to get from the locker room to the time clock, Plaintiff either took substantially less time to change, or he had to leave his work station well before 4:00 p.m.

### 3. *Vilma Kindred*

Plaintiff alleges that Vilma Kindred ("Kindred") is similarly situated. (Dkt. No. 35, Plaintiff's Motion p. 6) However, there is no evidence in the record of any "work" performed by Vilma Kindred prior to the beginning of her shift, or at any time thereafter. While in his Motion Plaintiff repeatedly refers to the "hours that she worked" (see Plaintiff's Motion at p. 6), Plaintiff relies solely on Kindred's time sheets, which merely reflect when she punched in. But Kindred's punch-in times vary between 5:22 a.m. and as late as 5:57/5:58 a.m. (Plaintiff's Ex. 5, Ferrara 346-48) Plaintiff has presented no evidence as to what Kindred did during those time periods -- whether she went to the cafeteria, how long it took her to change, identification of her work assignments/location and whether she, like Plaintiff, arrived at work in order to "take her time." There is also no evidence in the record addressing the following punch-in times of Kindred: January 1, 2014 -- 5:56 a.m.; January 21, 2014 -- 5:41 a.m.; January 28, 2014 -- 5:46 a.m.;

February 5, 2014 -- 5:57 a.m.; March 12, 2014 -- 5:54 a.m.; March 25, 2014 -- 5:42 a.m.; March

28, 2014 -- 5:49 a.m. (Plaintiff's Ex. 5, Ferrara 346, 48)[2]

## II.      THE COURT MUST DENY PLAINTIFF'S MOTION

### A.      The Standard for Section 216(b) Motions

Courts have broad discretion to conditionally certify an opt-in class of similarly situated

persons under Section 216(b) of the FLSA.  See Strait v. Belcan Eng. Group, Inc., 911 F. Supp.

2d 709, 718 (N.D. Ill. 2012) (internal citations omitted).  Courts apply a two-step process for

class certification under Section 216(b).  Id.  The first step is conditional certification and

normally occurs after minimal discovery.  Id.  As a result, courts apply a more lenient standard at

the first step.  The second step occurs after substantial discovery and the party opposing

certification can move to decertify the class, and a more stringent standard is applied.  Id.

Even at the first step, a plaintiff still must "establish a colorable basis" for his claims,

beyond allegations in the Complaint.  Settles v. General Electric, No. 12-00602-CV-W-BP at 3

(W.D. Mo. Feb. 19, 2013)[3]. Although a lenient standard is applied at the first step, courts have

repeatedly held the conditional certification standard is not hollow.  See Callazo v. Forefront

Educ., Inc., No. 08 C 5987, 2010 WL 335327, at *3 (N.D. Ill. Jan. 28, 2010) (conditional

certification is not "a mere formality"); Bramble v. Wal-Mart Stores, No. 09-493, 2011 U.S.

Dist. Lexis 3947, at *16 (E.D. Pa. Feb. 7, 2011) (citations omitted) (conditional certification

standard is "not nonexistent"); Settles, No. 12-00602-CV-W-BP at 3 (conditional certification

standard is "not invisible").

---

[2]     Plaintiff also attached as part of his Ex. 5, the time records of Gregorio Renteria.  (Ex. 5, Ferrara 569, 583-585)  These 2013 records reflect a scheduled starting time of 6:00 p.m. for Mr. Renteria. However, those records also reflect that on no less than twelve (12) occasions, Renteria punched in between 5:45 and 5:55 p.m. (January 11, November 9, 13, 16, 19, 25, 27, December 3, 13, 18, 20 and 23).  Id.  Plaintiff presented no evidence how Mr. Renteria was able to punch in between five (5) and fifteen (15) minutes prior to his shift, walk to the locker room, change his clothes and report to work by his 6:00 am start time, with or without any stop in the cafeteria.

[3]     Unpublished cases are attached at Ex. E.

8

On the other hand, when the parties have engaged in extensive discovery, like the parties have done here, courts have applied a higher standard than is normally applied at step one. Bunyan v. Spectrum Brands, Inc., Case No. 07 C0089-MJR, 2008 WL 2959932, at *4 (S.D. Ill. Jul. 31, 2008) (collecting cases); see also Hawkins v. Alorica, Inc., 287 F.R.D. 431, 439 (N.D. Ind. 2012). In Bunyan, the Court applied an intermediate standard at the conditional certification stage because the parties engaged in discovery for over ten months, exchanged written discovery and took depositions. Like Bunyan, the parties in this case have engaged in extensive discovery for eighteen months, including written discovery and depositions. (see attached Ex. D, Declaration of James J. Convery). Therefore, a higher standard should apply.

Regardless of which standard is used, Plaintiff bears the burden of demonstrating that he is similarly situated to over a thousand current and former hourly employees in three facilities. Strait, 911 F. Supp. 2d at 718 (internal citations omitted). Although the FLSA does not define "similarly situated," courts have held that a plaintiff must show that he or she is similarly situated by demonstrating that plaintiff and others were victims of a common policy or plan that violated the law. Flores v. Lifeway Foods, Inc., 289 F. Supp. 2d 1042, 1046 (N.D. Ill. 2003) (internal citations omitted). A "modest factual showing" cannot be based solely on allegations in the complaint or arguments in a motion; Plaintiff must provide some factual support based on personal knowledge, such as affidavits, declarations, deposition testimony or other documents. Molina v. First Line Solutions, LLC, 566 F. Supp. 2d 770, 786 (N.D. Ill. 2007). Therefore, the Court should not take Plaintiff's assertions in the Motion at face value; rather, it should apply a more thorough review of their assertions, based on admissible evidence. Acevedo v. Ace Coffee Bar, Inc., 248 F.R.D. 550, 555 (N.D. Ill. 2008) (at the conditional certification stage "…courts still require plaintiffs to make factual allegations supported by admissible evidence").

As argued below, Plaintiff has not met his burden under any standard. After eighteen months of discovery, Plaintiff's Motion is not supported by a single affidavit or declaration other than Plaintiff's deposition testimony. Although Plaintiff submits time records of three other employees (Plaintiff Ex. 5), he does not submit any evidence from those employees (or anyone else for that matter) to support his allegations. Even if the lenient standard is applied, Plaintiff does not meet it and he certainly does not meet the higher standard more applicable to a plaintiff having had the opportunity to conduct extensive discovery. Plaintiff's motion completely fails to identify sufficient facts warranting conditional certification.

### B.      Plaintiff Is Not Similarly Situated To Any Other Employee

Plaintiff seeks to issue notice to a thousand current and former hourly employees who worked at three different facilities; Bellwood, Bolingbrook and Forest Park, and in nine different departments. Plaintiff alleges that there is a common practice and policy of not paying hundreds of current and former employees at all facilities for all of the time it took them to change in and out of clothes, yet submits *no* evidence from any other such employee. There is no dispute that employees at the Forest Park and Bellwood[4] facilities are paid fifteen minutes to compensate them for changing in and out of clothes.[5] Plaintiff's claim is specifically that fifteen minutes was not enough time to fully compensate *him* for all the time *he* spent changing in and out of clothes.

Plaintiff's largest hurdle to conditional certification that he cannot overcome is that he has no personal knowledge whether fifteen minutes was enough time to compensate even one co-worker, let alone a thousand current and former employees in three facilities and nine different departments for changing in and out of clothes. Throughout his employment, Plaintiff only

---

[4]      As addressed herein, the Bolingbrook facility has completely different operations and its employees do not change in or out of clothes.

[5]      Plaintiff conveniently does not mention in his Motion the undisputed daily payment of fifteen minutes for changing clothes, creating a false impression that Ferrara does not pay its employees in any manner for clothes changing time.

worked in one department (maintenance) and only at one facility (Forest Park). Moreover, Plaintiff testified that he was in the locker room alone when changing and did not see other employees changing. Moreover, Plaintiff did not work at the two other facilities and he never witnessed how long it took any other employee to change in and out of clothes, including employees in his *own* department. Courts have refused to conditionally certify a class where, as here, the plaintiff premises his allegations on facts for which he has no personal knowledge or other support. See, e.g., Pegues v. CareCentrix, Inc., No. 12-2484-CM, 2013 WL 1896994, at *3 (D. Kan. May 6, 2013). These facts alone require denial of Plaintiff's Motion.

Plaintiff merely relies on conclusory arguments, his own deposition testimony and unexplained time sheets for one employee, Vilma Kindred. While Plaintiff took the 30(b)(6) deposition of Angie Castejon, she did not testify as to the changing habits of any specific employee. To the contrary, Castejon testified to the fifteen minute changing time paid and that no employee ever questioned that time. (Castejon Dep. p. 115, lns. 6-9) Plaintiff next uses Vilma Kindred's time sheets to argue that fifteen minutes was not enough time to compensate her, but only makes conclusory arguments about the time sheets and does not submit an affidavit or other testimony from her or anyone else to establish that was the case. As explained in Section I.B.3 above, the time sheets, if anything, show that the opposite is true, given on several occasions Kindred arrived to work less than 20 minutes prior to her shift, and as little as 3-6 minutes prior to the start of her shift. Aside from Plaintiff's limited allegations about *his* experience, Plaintiff provides no evidence from Kindred, or any employee – whether by affidavit or testimony – that fifteen minutes was not sufficient to compensate an entire class of current and former employees for changing time. See Flores, 289 F. Supp. 2d at 1046 (denying conditional certification of off-the-clock claim because two affidavits out of fifty employees not enough); Hall v. Guardsmark, LLC, No. 11 C 213, 2012 WL 3580086 at *10-12 (W.D. Pa. Aug. 12, 2012)

(denying conditional certification of pre and post-shift off-the-clock claims based in part on plaintiffs' failure to submit affidavits of potential class members); Landsberg v. Acton Enters., No. C2-05-500, 2006 WL 3742221, at *3 (N.D. Ohio Dec. 15, 2006) (two affidavits not enough).

After eighteen months of phase one discovery and having the identities of a number of employees and their timesheets, Plaintiff had more than ample time to obtain and submit evidence -- assuming it existed. It is telling that he did not submit anything. There is no evidence of anyone similarly situated to Plaintiff, especially where Plaintiff's actions were unique in several respects: his decision to arrive early to take time at his convenience; his personal choices to change socks and his personal t-shirt as part of his changing routine: as well as Plaintiff's decision to stop and pick up a bucket and mop before the start of his shift.

The next hurdle the Plaintiff cannot overcome is to show that he is similarly situated to current and former employees at the Bolingbrook facility. He is not. Unlike the Bellwood and Forest Park facilities, Bolingbrook is solely a packaging facility and has no manufacturing operations. Nearly all Bolingbrook employees do not even change clothes, because they wear a frock that is worn over their street clothes. The only employees that change into a shirt and pants are a few maintenance employees. However, as explained above, Plaintiff never worked at the Bolingbrook facility and has not submitted any evidence of the changing habits there, so he has not shown that he is similarly situated to employees in Bolingbrook, including maintenance employees.

The final hurdle that Plaintiff cannot overcome is to show that fifteen minutes was not enough compensation for employees in all other departments in Forest Park, Bellwood and Bolingbrook, and because the supervisors at all of the facilities are different. In other words, the time it took to change clothes and report to an employee's work station may vary by department, and direct supervisors who are responsible for ensuring compliance with time keeping, and who

12

would be in the best position to know if fifteen minutes were enough time to compensate employees, are different in each department within each facility.  Once again, Plaintiff's submission includes no facts in this regard.

### C.      Plaintiff's Authorities Support Denial Of Plaintiff's Motion

Plaintiff's own cited/submitted authorities (Plaintiff Ex. 2) further demonstrate he has not met the standards for conditional certification.  In Anyere v. Wells Fargo Co., 2010 U.S. Dist. LEXIS 35599 (N.D. Ill. Apr.12, 2010), unlike the Plaintiff in this case who submitted just his own affidavit and no evidence of the changing practices of other employees, the plaintiffs submitted no less than five affidavits that were based on personal knowledge attesting that the five affiants, as well as other employees, were subject to the same challenged practice.  Id. at *5. Relying on Howard v. Securitas Sec. Servs., USA Inc., 2009 U.S. Dist. LEXIS 3913 (N.D. Ill. Jan. 20, 2009), Anyere applied a more lenient standard because a plaintiff typically files a conditional/certification motion *without the benefit of discovery*, quite unlike the 18-month period Plaintiff was afforded in this case.

In Barreda v. Prospect Airport Servs., 2008 U.S. Dist. LEXIS 112216 (N.D. Ill., November 26, 2008) two plaintiffs submitted declarations concerning not only their own circumstances involving an alleged unlawful practice, but they also identified "numerous other" employees who were subjected to the same alleged improper practice.  Id. at *8.  In Boyd v. Jupiter Aluminum Corp., 2006 U.S. Dist. LEXIS 35654 (N.D. Ill. May 31, 2006), the plaintiffs submitted not only their own affidavits describing their experiences in working off the clock, but also their personal observations of other employees actually working in a manner suggesting they were also subject to the same alleged improper practice of performing unpaid work.

Plaintiff does not cite to any authority that reflects, after an extensive opportunity to conduct nearly 18 months of discovery, conditional certification of a class is warranted based on the "evidence" (or lack thereof) in his Motion.

### D. Conditional Certification Is Not Appropriate Because Plaintiff's Claims Require Individualized, Fact-Specific Inquiries On Liability and Damages

Plaintiff's claim should not proceed as a collective action because it requires individualized evidence and testimony from each potential class member to establish liability and, if necessary, prove damages. In order to establish liability, each opt-in plaintiff of potentially a thousand would have to testify: (a) the amount of time it took them to change in and out of clothes; (b) whether the time spent changing varied from day-to-day or by the location of the locker room because Forest Park contained two locker rooms; (c) whether fifteen minutes was enough time to compensate them; and (d) whether Defendants had knowledge that fifteen minutes was not enough time. If liability is established, then an unmanageable trial would minimally include testimony of every opt-in plaintiff regarding: (a) the number of days it took longer than fifteen minutes to change; and (b) the amount of time over fifteen minutes that it took to change clothes. Then, Defendants would present evidence rebutting the testimony of each plaintiff. Damages could not be determined by sampling or representative testimony because time records would not reflect all of the time allegedly spent changing; therefore, testimony based each class member's changing time is required. Plaintiff has not offered any suggestion on how he would present this evidence without having to call every opt-in plaintiff as a witness to establish liability and damages. Federal courts have refused to allow claims to proceed on a collective basis when such individualized facts are involved. Comcast Corp. v. Behrend, No. 11-864, 133 S. Ct. 1426 (March 27, 2013); Espencheid, 705 F. 3d at 772; see also Strait, 911 F. Supp. 2d at 731 (refusing to certify a collective class based on the "myriad of individualized factual issues"); Sheffield v. Orius Corp., 211 F.R.D. 411, 413 (D. Ore. 2002) ("[a

14

collective] action dominated by issues particular to individual plaintiffs cannot be administered efficiently").

### III.    PLAINTIFF'S PROPOSED NOTICE SHOULD NOT BE APPROVED

Should the Court decide conditional certification is appropriate, which Defendants vigorously contest, the Court should allow the parties to propose a joint notice, rather than adopting Plaintiff's proposed notice, because Defendants were not given an opportunity to review and suggest revisions to the proposed notice.

WHEREFORE, for the above stated reasons, Plaintiff's Motion for Conditional Certification should be denied in its entirety.

Dated: February 25, 2016                                    FERRARA CANDY COMPANY  and
                                                                             THOMAS P. POLKE

                                                                    By:   /s/James J. Convery
                                                                              One of its Attorneys

James J. Convery
Antonio Caldarone
Laner Muchin, Ltd.
515 N. State, Suite 2800
Chicago, Illinois  60654
(312) 467-9800/(312) 467-9479 (fax)

15

## CERTIFICATE OF SERVICE

I, James J. Convery, an attorney, hereby certify that on February 25, 2016, I caused to be served a copy of the foregoing **Defendants' Memorandum In Opposition To Plaintiff's Motion For Conditional Certification And Judicial Notice Under The Fair Labor Standards Act**, in the above-captioned matter to be filed with the Clerk of the District Court and served on the parties of record, including those listed below, by operation of the Court's CM/ECF electronic filing system, addressed to:

> Valentine Narvaez
> Consumer Law Group, LLC
> 6232 N. Pulaski, Suite 200
> Chicago, IL  60646
> vnarvaez@yourclg.com
>
> Kristin E. Prinz
> The Prinz Law Firm, P.C.
> 1 East Wacker Drive, Suite 550
> Chicago, IL  60601
> kprinz@prinz-lawfirm.com

/s/ James J. Convery

16