**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SATURNINO Z. VAZQUEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 14 C 4233 |
| v. | ) | |
| | ) | Magistrate Judge |
| FERRARA CANDY COMPANY | ) | Maria Valdez |
| and THOMAS P. POLKE | ) | |
| individually, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff's Motion for Conditional Certification [Doc. No. 35.], as well as his Supplemental Class Allegations to his Motion for Conditional Certification and Judicial Notice, [Doc. No. 48], which is taken as a Motion to certify a class under Federal Rule of Civil Procedure 23. The Motions have been fully briefed. For the reasons stated below, Plaintiff's Motion for conditional certification under the Fair Labor Standards Act [Doc. No. 35] and his Motion for class certification of his state-law claims [Doc. No. 48] are denied.

## FACTUAL BACKGROUND

In this "combined" action, Plaintiff has moved both for certification of a collective action under the Fair Labor Standards Act (FLSA), *see* 29 U.S.C. § 216(b), as well as for certification of a class action according to Rule 23 of the Federal Rules of Civil Procedure for his claims under the Illinois Minimum Wage Law (IMWL), 820 ILCS § 105/1 et seq., and the Illinois Wage Payment and Collection Act (IWPCA),

1

820 ILCS § 115/1 et seq. *See Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 973 (7th Cir. 2011) (concluding that "there is no categorical rule against certifying a Rule 23(b)(3) state-law class action in a proceeding that also includes a collective action brought under the FLSA").

Plaintiff Saturnino Vazquez has worked for Defendant Ferrara Candy Company for many years. For the time period relevant to this action, Mr. Vazquez has been a janitor at a facility in Forest Park, Illinois operated by Ferrara. [Doc. No. 43-3 at 6.] In addition to the Forest Park facility, Ferrara also operates facilities in in Bolingbrook and Bellwood, Illinois. [Doc. No. 43-1 at 16-17.] The Forest Park facility employs approximately 585 employees who are paid on an hourly basis, 285 full-time and 300 temporary employees. *Id.* at 6. The facility contains packaging, panning, starch, quality control and assurance, color and flavoring, shipping, and warehouse and maintenance divisions. *Id.* at 52.

For sanitary purposes, Ferrara requires personnel at the Forest Park plant to wear certain items of clothing and protective equipment during their shift. *Id.* at 15. The requirements for janitorial employees such as Mr. Vazquez consist of a shirt, pant, work shoes, hair net, earplugs, and beard guard (if applicable). [Doc. No. 43-1 at 15.] The shirt is a short- or long-sleeve shirt, provided clean by Ferrara, which has snaps on it. *Id.* at 30. The pants, also provided clean by Ferrara, are cotton with a zipper and a snap. [Doc. No. 35-4 at 8.] While an employee's work shoes must be closed-toed and rubber soled, there are no further restrictions and the shoes are not provided by the company. [Doc. No. 43-1 at 16, Doc. No. 35-4 at 13.] The panning,

2

starch, color and flavor, shipping, maintenance, and warehousing departments at Forest Park are required to wear the same equipment as the janitorial department.[1] [Doc. No. 43-1 at 15-16.] In the packaging department, the only variation from these requirements is that women are permitted to wear a dress as opposed to pants and a shirt. *Id.* at 15. In the quality control and quality assurance departments, employees have the option of wearing the pants and shirt or a frock—a long jacket-like garment made of paper which is worn over street clothes. *Id.* at 16, 30. At Forest Park, there are three locker rooms in which employees are permitted to change clothes: separate locker rooms designated to men and women were located on the first floor and estimated to be a "a minute or two" from the entrance, *id.* at 18-19, and a third men-only locker room is located on the second floor.

Ferrara's Bellwood facility employs approximately between 350 and 400 employees paid on an hourly basis, 150 full-time employees as well as 200 to 250 temporary employees. *Id.* at 6. Bellwood is another manufacturing facility, which houses packaging, starch, quality control and assurance, and maintenance and janitorial operations. *Id.* at 15. The employees at Bellwood wear the same kinds of uniforms as those worn at Forest Park.[2] *Id.* at 18. The Bolingbrook plant employs approximately 150 employees paid on an hourly basis, 50 full-time employees and

---

[1] The shipping and maintenance departments also have "hipster jackets" available to employees in the shipping department due to colder temperatures of the working area. [Doc. No. 43-1 at 15-16.] This additional piece of equipment is not germane to determining Plaintiff's motion.

[2] Although the parties do not address this point in briefing, it appears that Defendants' 30(b)(6) witness, Angie Castejon, had been designated as such only in relation to the Forest Park facility; Ms. Castejon, however, nonetheless testified as to her personal knowledge with regard to the other facilities. [Doc. No. 43-1 at 6.]

100 temporary employees. *Id.* at 6, 16-17. Bolingbrook is a packaging center, where there are no manufacturing operations. *Id.* at 17. At Bolingbrook, the maintenance and janitorial personnel wear the same uniform as their counterparts at Forest Park and Bellwood. *Id.* Employees in the packaging department—the only other department at Bolingbrook—wear the paper frock. *Id.* at 18.

According to Ferrara's policies, employees must "punch in" to the time clock upon arrival for work. *Id.* at 8. Employees are permitted to punch in no more than thirty minutes prior to their shift's scheduled start, and must "punch out" after its scheduled completion. *Id.* at 8-9. Employees must be ready to begin work at the scheduled start of their shift: for employees in certain departments such as the panning, packing, and color and flavor lab departments, this means that the employee must be present on the assembly line at the scheduled start of the shift to relieve the employee from the prior shift. *Id.* at 29-30. For the maintenance, shipping, and janitorial departments—which are not line work positions—the employee must simply be ready to start his or her work, at locations which can vary. *Id.* at 30. Therefore, employees at Ferrara's facilities must have put on their required uniform prior to the time at which they begin their shifts, or else they face the potential of disciplinary action. *Id.* at 19, 22-24.[3] In this system, Ferrara's time cards are used more to monitor attendance rather than to regulate pay: employees are not paid based on the punch times on their time cards, but rather based on the scheduled start and end times for their shift. [Doc. No. 43-1 at 10, 20.] Employees

---

[3] Although Ms. Castejon stated that, in practice, employees were not disciplined for such lapses, she was clear that Ferrara's policy permitted such discipline. [Doc. No. 43-1 at 28-29.]

4

who believe that they are working hours which are outside of the recorded shift times may bring requests for additional compensation to their supervisors, who in turn can have upper-level management approve a pay adjustment. *Id.* at 9-10. Although the employees have a shift lasting eight hours, Ferrara releases employees fifteen minutes prior to the scheduled end of their shift. *Id.* at 21-22. This fifteen minute block of time—for which employees are not working, but for which they are paid—is intended to compensate the employees for the time spent changing into and out of ("donning" and "doffing") their required uniforms. *Id.* These policies are consistent at the Forest Park, Bellwood, and Bolingbrook facilities. *Id.* at 24, 30.

For the time period at issue in this case, Plaintiff was a janitor at Defendants' Forest Park facility. [Doc. No. 48-1 at 2.] According to Plaintiff, his shift was scheduled to begin at 6:00 a.m., but he would usually arrive at 5:30 a.m. *Id.* When he arrived at the facility, Plaintiff would "clock in" to the time system, and would go to the cafeteria to drop off his lunch. [Doc. No. 43-3 at 9.] He would pick up his shirt and pants on the first floor, then proceed to the second floor locker room to change. *Id.* After changing, he would retrieve a bucket and mop from the basement in order to be ready for the 6:00 a.m. start of his shift. *Id.* at 12.

In addition to his testimony and affidavit, Plaintiff has produced—in his combined briefing— the time records for six other Ferrara employees, Velma Kindred, [Doc. No. 35-6 at 8-10; [Doc. No. 48-1 at 35-40], Gregorio Renteria, [Doc. No. 35-6 at 11-14], Leobardo Zariana, [Doc. No. 35-6 at 15-18], Maria Arcos. [Doc. No. 48-1 at 16-17], Antonio De La Paz, [Doc. No. 48-1 at 21-25], Jose Morales [Doc.

No. 48-1 at 27-33]. Each time record submitted to the Court—which covers a period of about three months for each employee—shows an official punch-in and punch-out time that corresponds with the worker's shift, and for which the employee was paid. However, below each official punch-in and punch-out time are recorded the actual times which the employee had punched in and out; nearly every day, each employee's actual punch-in time was earlier than the official shift start time; the majority of punch-out times, however, were before the shift's scheduled end-time. The records for Kindred, Arcos, De La Paz, and Morales are also accompanied by pay stubs which demonstrate that they were paid according to the scheduled shift time, and not the actual punch times. No other information for these or other putative class members was submitted.

## DISCUSSION

Plaintiff seeks to have the Court to conditionally certify a collective action for his claims under the Fair Labor Standards Act and seeks a class action under Federal Rule of Civil Procedure 23 for his claims under Illinois law. These Motions raise a number of issues which the Court will address in order below.

## I.    CERTIFICATION OF A COLLECTIVE ACTION UNDER THE FAIR LABOR STANDARD ACT

"Under the FLSA, employees are entitled to overtime pay (*i.e.*, one and one-half times the regular rate) for any hours worked in excess of forty hours per week, unless they come within one of the various exemptions set forth in the Act." *Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 572 (7th Cir. 2012) (citing 29 U.S.C. §§ 207, 213)). Many years ago, the Supreme Court held that the time

employees spent donning and doffing uniforms or other specialized work clothes was compensable under the FLSA. *See Anderson v. Mt. Clemens Pottery* Co., 328 U.S. 680, 692–93 (1946). Congress subsequently amended the FLSA with the Portal-to-Portal Act, 29 U.S.C. § 254, to exclude from compensation "activities which are preliminary to or postliminary to [an employee's] principal activity or activities." 29 U.S.C. § 254(a)(2). However, an employer must still compensate an employee for activities that are "an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded by" the FLSA. *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956); *see also* 29 C.F.R. § 790.8(c). The FLSA "gives employees the right to bring their FLSA claims through a 'collective action' on behalf of themselves and other 'similarly situated' employees," *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010) (citing 29 U.S.C. § 216(b) (2006)), and "[a] district court has wide discretion to manage collective actions." *Id.* (citing *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 171 (1989)).

While FLSA claims may be pursued as a collective action when the proposed plaintiffs are "similarly situated," the Act does provide a definition for when that is the case. *See Russell v. Illinois Bell Tel. Co.*, 721 F. Supp. 2d 804, 811 (N.D. Ill. 2010). However, "the majority of courts . . . have adopted a two-step process for determining whether an FLSA lawsuit should proceed as a collective action." *Camilotes v. Resurrection Health Care Corp.*, 286 F.R.D. 339, 345 (N.D. Ill. 2012) (citation and internal quotation marks omitted) (omission in original). "Step one involves a conditional certification, and step two, a final certification. Plaintiffs'

burden increases with each, directly proportional to discovery progress." *Briggs v. PNC Fin. Servs. Grp., Inc.*, No. 15-CV-10447, 2016 WL 1043429, at *1 (N.D. Ill. Mar. 16, 2016).

In "conditional certification," a plaintiff "can show that the potential claimants are similarly situated by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Camilotes*, 286 F.R.D. at 345 (quoting *Franks v. MKM Oil, Inc.*, No. 10 CV 00013, 2012 WL 3903782, *9 (N.D.Ill. Sept. 7, 2012)). "[T]he purpose of conditional certification is to determine the size and contour of the group of employees who may become collective members and whether these potential members are 'similarly situated.' " *Briggs*, 2016 WL 401701, at *2 (citing 7B Charles A. Wright et al., Federal Practice & Procedure § 1807). Accordingly, at the conditional certification phase, a court requires only a "modest factual showing" that the potential plaintiffs are similarly situated, given that minimal discovery has taken place. *See, e.g.*, *id.* (citing cases); *see also Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995). "After discovery, the court conducts the second, more stringent step of the inquiry." *Rottman v. Old Second Bancorp, Inc.*, 735 F. Supp. 2d 988, 990 (N.D. Ill. 2010). At the second step of the collective action certification analysis, "[t]he Court must consider: (1) whether the plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns." *Smith v. Family*

8

*Video Movie Club, Inc.*, No. 11 C 1773, 2015 WL 1542649, at *3 (N.D. Ill. Mar. 31, 2015).[4] "These factors help a court determine whether it can manage the case and bring about a fair and reasonably expeditious resolution of the collective action." *Id.* (quoting *Russell*, 721 F.Supp.2d at 811).

## A. Conditional Certification is Inappropriate at this Late Stage of the Litigation.

The parties dispute the legal standard applicable to Plaintiff's motion to certify a collective action. Plaintiff contends that this case is appropriately analyzed at the conditional certification step, while Defendants argue that the case should be evaluated at the more stringent second step. Examining the history of the case, the Court finds that conditional certification is inappropriate for both procedural and substantive reasons.

This case was originally filed in June of 2014. [Doc. No. 1] Shortly thereafter, Plaintiff filed a short placeholder motion for full class certification, [Doc. No. 8], which was entered and continued generally by the district judge. [Doc. No. 11.] In their initial joint status report, filed shortly thereafter, the parties anticipated a fact discovery completion date of December 31, 2014. [Doc. No. 10 at 2.] There was no indication in the joint status report that the Plaintiff would seek minimal discovery and then file a motion for conditional certification prior to completing fuller discovery later (in the initial status report, an anticipated deadline for

---

[4] Collective actions under the FLSA can coexist with class actions under Rule 23, *see Ervin*, 632 F.3d at 973, and "[t]his coexistence has led the Seventh Circuit to recognize the similarly between Rule 23 and Section 216(b) analyses." *Smith*, 2015 WL 1542649, at *3 & n.3 (N.D. Ill. Mar. 31, 2015) (citing *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir.2013)). "Consequently, while analyzing []certification  under FLSA precedent," courts can "look to Rule 23 for additional guidance." *Id.*

9

dispositive motions was January 30, 2015). *Id.* The parties then consented to proceed before a magistrate judge, and the matter was referred to this Court. [Doc. No. 12.] By agreement of the parties, the motion for class certification was later stricken by the Court with leave to be refiled. [Doc. No. 27.]

Despite this initial schedule, discovery was extended a number of times, and ultimately continued until the filing of Plaintiff's Motion for Conditional Certification in January 2016, as discussed in greater detail in the Court's ruling on Plaintiff's Motion for Extension of Time to File His Motion to Certify the Class for His State Wage Law Claims and to Extend the Close of Fact Discovery, [Doc. No. 46] During the course of these extensions, however, Plaintiff repeatedly represented to opposing counsel and to the Court that he would move for certification after the close of discovery, and made no mention of conditional certification. These representations were made at hearings on May 25, July 21, September 8, and October 10, 2015. However, on January 15—and despite counsel's earlier (and repeated) representations throughout the more-than yearlong discovery—Plaintiff did not file a motion for certification, but instead a motion for *conditional* certification under the Fair Labor Standards Act, [Doc. No. 35], as well as a motion to extend both the discovery cut-off and the deadline for filing his motion for certification of his state law claims as a class under Rule 23. [Doc. No. 37.] He now argues that conditional certification, rather than the full collective action certification analysis, is appropriate for his claims under the FLSA.

As the above history shows, however, rather than coming near the beginning of the case and without the benefit of significant discovery, Plaintiff's motion for certification of his FLSA claims came at the close of well over one year of discovery which comprised full document production (without any limitation) and depositions. Furthermore, Plaintiff repeatedly noted to the Court that a motion for class certification was anticipated, and made no mention to this Court or opposing counsel that *conditional* certification—as well as a request to continue discovery on the Rule 23 claims—would be filed instead. Because Plaintiff has had the full benefit of discovery—which is now complete—"the court can skip the first step of conditional certification and decide whether the collective action can be certified." *Sanchez v. Roka Akor Chicago LLC*, No. 14-CV-4645, 2016 WL 74668, at *5 (N.D. Ill. Jan. 7, 2016); *see also Ledbetter v. Pruitt Corp.*, No. CIV.A. 5:05-CV-329CA, 2007 WL 496451, at *2 (M.D. Ga. Feb. 12, 2007) (noting that the conditional certification "rationale disappears . . . once a plaintiff has had an opportunity to conduct discovery with respect to a defendant's policies and procedures").

**B. <u>Even though the more rigorous standard is appropriate, Plaintiff has not met the requirements for certification of a collective action under either standard.</u>**

While Plaintiff's motion for certification of a collective action should be evaluated under the more rigorous standard, it fails even when evaluated under the lesser conditional certification standard. Plaintiff's proposed collective action covers:

> All persons who are or have been employed by defendant Ferrara Candy Company in Illinois, who were not paid at a rate equal to one and one half times his or her regular rate of pay for all hours worked in excess of forty (40) per workweek *because the individual performed*

> *work for the Company that was uncompensated, in the form of unpaid donning and doffing* (putting on and taking off) of uniforms and/or safety equipment (including time spent walking to obtain the uniforms and/or safety equipment and time spent walking to employee work stations).

Doc. No. 35-1 at 8. (emphasis added.) Even requiring only a "modest factual showing" that the members of the putative collective action are similarly situated, Plaintiff's request for conditional certification would be denied.

Although lenient, the conditional certification standard is not a "mere formality." *See Betancourt v. Maxim Healthcare Servs., Inc.*, No. 10 C 4763, 2011 WL 1548964, at *6 (N.D. Ill. Apr. 21, 2011). "[A] modest factual showing cannot be founded solely on allegations of the complaint; some factual support must be provided, such as in the form of affidavits, declarations, deposition testimony, or other documents." *DeMarco v. Northwestern Memorial Healthcare*, No. 10 C 397, 2011 WL 3510905, at *1 (N.D.Ill. Aug. 10, 2011) (quoting *Anyere v. Wells Fargo, Co.*, No. 09 C 2769, 2010 WL 1542180, at *2 (N.D.Ill. Apr. 12, 2010)). And although the conditional certification inquiry is "undemanding," *Shiner v. Select Comfort Corp.*, No. 09 C 2630, 2009 WL 4884166, at *3 (N.D.Ill. Dec. 9, 2009), "the court is under no obligation, as it would be on a motion to dismiss, to accept the plaintiff's allegations as true." *Howard v. Securitas Sec. Servs., USA Inc.*, No. 08 C 2746, 2009 WL 140126, at *5 (N.D.Ill. Jan. 20, 2009). Through the affidavits, declarations, testimony, or documents a plaintiff must demonstrate "a factual nexus between the plaintiff and the proposed class or a common policy that affects all the collective members." *Id.* at *2.

Here, there is no dispute that Ferrara applies a common policy to the members of the putative collective: Ferrara's hourly employees at each of the three facilities in certain units were required to wear certain work-related equipment and they were required to put that equipment on prior to the start of their shifts. The employees were dismissed from their shifts fifteen minutes prior to the scheduled end of the shift, but were nonetheless paid according to the schedule. [Doc. No. 43 at 21-22, 31] Thus, what is at issue in this case will be whether the 15 minutes paid by Ferrara adequately compensates the putative collective for the compensable time spent donning and doffing; if not, the policy is unlawful.[5] This suggests that, at the certification stage, some minimal evidence must be shown that other putative class members could not accomplish the compensable donning and doffing within the 15 minutes provided.

While the members of the putative collective were subject to a common policy, Plaintiff in this case has failed to show any likelihood that they "were victims of a common policy or plan *that violated the law*." *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003) (emphasis added). The evidence which Plaintiff has put forward in support of certification of a collective action

---

[5] Although Plaintiffs are not perfectly clear in their briefing, they appear to argue by implication that Defendants' policy was designed to compensate only for the "donning" period. [Doc. No. 51.] Again, the only evidence offered by Plaintiffs on this point was from Plaintiff himself, and the testimony of Defendants' 30(b)(6) witness is consistent with the policy as described here. [Doc. No. 43-1 at 21-22.] To this extent, then, that the parties disagree on this point, the Court finds that the policy as described by the 30(b)(6) witness is that which is in effect. *See Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014) ("[W]hen factual disputes bear on issues vital to certification (that is, to whether the suit should be allowed to be litigated as a class action), such as predominance, the court must 'receive evidence . . . and resolve the disputes before deciding whether to certify the case.'") (quoting *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir.2001)).

consists of his affidavit as well as the timesheets and payment records of other Ferrara employees. Plaintiff spends a great deal of time detailing the facts relating to time for which Plaintiff and one other worker, Velma Kindred, allegedly were not compensated. [Doc. No. 35-1 at 4-7.] While the time records of the other employees including Ms. Kindred do show that the period of time for which they had clocked in an out was, in fact, greater than the period for which they had been paid, they provide no evidence as to what activities they undertook during that time. Such evidence speaks to the fact that the Defendant did not pay the employees for all time indicated in the payroll records, but does not in and of itself show whether any other employee could not sufficiently don and doff within the compensable 15 minute period. Plaintiff has provided no other affidavit, declaration, testimony, or document addressing whether 15 minutes is sufficient to don and doff, except for the time records which, as described above, do not help answer the question.[6]

*Flores*, cited by Defendants, illustrates the problem. In that case, Plaintiff sought conditional certification and submitted unrebutted affidavits from two Plaintiffs which claimed that they had worked overtime hours for which they had not been compensated. 289 F. Supp. 2d at 1046. The Court, however, found that "a demonstration of [the Defendant's] payment practice concerning two out of fifty employees (four percent of Defendant's workforce) does not rise to the level of a

---

[6] Under section 216(b), a plaintiff may seek redress for a failure to pay minimum wages or overtime according to the FLSA. Under the FLSA, employers are required to keep records of the hours worked by their employees, 29 U.S.C. § 211(c), and it is unlawful to fail to do so. *Id.* § 215(a)(5). However, Plaintiffs cannot enforce this section through section 216. *See* 29 U.S.C. § 216(b); *see also Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 843 (6th Cir. 2002); *Farmer v. DirectSat USA*, LLC, No. 08 C 3962, 2010 WL 3927640, at *12 (N.D. Ill. Oct. 4, 2010) (summarizing cases).

common policy or plan by Lifeway that violated the FLSA." *Id.* Plaintiff's showing here is even less convincing: he has not provided any evidence that any member of the putative collective other than himself was not adequately compensated by the 15 minute time period. This deficiency dooms Plaintiff's attempt to conditionally certify and, as discussed below, also effects the determination of class certification.

Given that Plaintiff fails to meet even the lower conditional certification standard, evaluating Plaintiff's claims under the more stringent standard—were the Court to find that such a standard applies—would result in the same outcome. As noted above, at the second step of the collective action certification analysis "[t]he Court must consider: (1) whether the plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns." *Smith*, 2015 WL 1542649, at *3. Without any information as to the other putative members of the collective as described above, it is impossible for the Court to assess the factual and employment settings of the collective members (which here work in different facilities and under different job titles) or to determine any individual defenses available to those members. And it would not be fair to certify a collective action for trial in these circumstances, where Plaintiff has put forward no evidence of a purported violation related to any member of the putative collective other than himself.

Having previously found that the Plaintiff's motion for conditional certification was submitted too late in the litigation, the Court allowed the Plaintiff

to resubmit his motion as one for certification using the heightened standard. [Doc.
No. 45.] While in response to the order Plaintiff rehashed his arguments for
conditional certification under Rule 23 of the Federal Rules of Civil Procedure, he
did not amend his motion for conditional certification of a collective action under the
FLSA.[7] Nonetheless, authority submitted by Plaintiff in his conditional certification
motion related both to the conditional certification standard as well as the
heightened standard. The Court will review Plaintiff's arguments and authority as
they relate to both standards.

Plaintiff relies mainly on the Eighth's circuit's opinion in *Bouaphakeo v.
Tyson Foods, Inc.*, 765 F.3d 791, 797 (8th Cir. 2014), *aff'd*, __ U.S. __, 136 S. Ct.
1036 (2016), a case decided under the heightened standard. As with Ferrara, the
company in *Bouaphakeo* "had a specific company policy," which it referred to as "K-
code time," which compensated employees for a fixed amount of time "for donning,
doffing, and walking" and which "applied to all class members." 765 F.3d at 797. In
that case, the Court of Appeals affirmed the certification of a collective action under
the higher standard despite the Defendants' contentions that variations in the
employees' work equipment, individual routines, and work settings precluded

---

[7] After Plaintiff filed his motion for *conditional* certification under the FLSA, the
Court entered an order denying Plaintiff's motion to extend the discovery deadline and seek
an extension to file his Motion for class certification under Rule 23. [Doc. Nos. 45 & 46.] In
its orders, the Court noted that, while Plaintiff had represented he would be filing a motion
for certification, "[w]ithout seeking leave of Court prior to the deadline, however, Plaintiff
instead filed his motion for conditional certification." [Doc. No. 45.] The Court noted that
conditional certification was inappropriate given the circumstances discussed above, and
offered Plaintiff an opportunity to supplement his motion for conditional certification with
additional authority. *Id.* Plaintiff did file a supplement, but that supplement related only to
certifying a class action of his state-law claims under Rule 23, and did not provide any
additional authority or argument based on the FLSA. [Doc. No. 48.]

certification. *Id.* In that case, however, the Plaintiffs had submitted a "time study show[ing] that donning and doffing all equipment, plus walking, took an average of 18 minutes in the fabrication department and 21 minutes in the kill department." *Id.* Based on that evidence, the Eighth Circuit found that the district court did not abuse its discretion in certifying the collective action because, "[w]hile individual plaintiffs varied in their donning and doffing routines, their complaint [was] not 'dominated by individual issues' such that 'the varied circumstances . . . prevent "one stroke" determination.' " *Id.* (quoting *Luiken v. Domino's Pizza*, LLC, 705 F.3d 370, 376 (8th Cir.2013)) (further citation omitted). In stark contrast to the evidence submitted in *Bouaphakeo*, the Plaintiffs here have submitted *no* evidence as to the routine of *any* other member of the putative collective action, and the court therefore simply cannot determine whether or not such a resolution is possible because there is no evidence from which the Court can analyze these issues related to the members of the putative collective.[8]

Plaintiff also relies on a number of cases that are factually distinct from his case. Most involve policies that did not compensate the proposed collective for *any* time spent donning and doffing; as such, the showing that the prospective members were all required to wear protective equipment and required to have that equipment on at the scheduled shift time was sufficient to show that the Plaintiffs

---

[8] Plaintiff's reply brief, in focusing on the time spent changing into the required protective equipment before a shift, seems to argue that—because Ferrara allowed workers to leave the shift early but did not allow them to show up late, it compensated them only for time spent taking off their required equipment, and not for time spent putting it on. [Doc. No. 44 at 6.] But so long as the fifteen minutes paid by Ferrara was sufficient to cover the time spent both putting on and taking off the require equipment which was compensable under the FLSA, there would be no violation of the Act.

were similarly situated with respect to the alleged violation of the law. *See Curry v. Kraft Foods Glob., Inc.*, No. 10 C 1288, 2011 WL 4036129, at *3 (N.D. Ill. Sept. 12, 2011) (evaluating case under Rule 23 standard, rather than "similarly situated" standard under FLSA); *Anyere*, 2010 WL 1542180, at *2 ("conditional certification" standard); *Kasten v. Saint-Gobain Performance Plastics Corp.*, 556 F. Supp. 2d 941, 954 (W.D. Wis. 2008) (higher standard); *Musch v. Domtar Indus., Inc.*, 252 F.R.D. 456, 458 (W.D. Wis. 2008) ("conditional certification" standard); *Spoerle v. Kraft Foods Glob., Inc.*, 253 F.R.D. 434, 440 (W.D. Wis. 2008); *Boyd v. Jupiter Aluminum Corp.*, No. 2:05-CV-227PPSAPR, 2006 WL 1518987, at *2 (N.D. Ind. May 31, 2006) (conditional certification). Other cases cited by Plaintiff discuss determinations of types of activity that are compensable under FLSA on a motion for summary judgment, *see Leon v. El-Milagro, Inc.*, No. 11 CV 4255, 2012 WL 1032890, at *3-5 (N.D. Ill. Mar. 23, 2012); *Hoyt v. Ellsworth Co-op. Creamery*, 579 F. Supp. 2d 1132, 1137-42 (W.D. Wis. 2008), which is not at issue in a certification analysis.

Plaintiff has put forward one case, *Brooks v. Safety-Kleen Systems, Inc.*, No. 11 C 7245, 2012 WL 3598763 (N.D. Ill. Aug. 14, 2012), which is similar to his. In *Brooks*, part of the company's policy was to compensate its employees with a flat 15 minute period for time spent donning and doffing (although Plaintiff argued that the Defendant also had other policies which resulted in unpaid time). *Id.* at *1. In that case, the district court granted conditional certification based on the affidavit of single plaintiff in addition to a previous case analyzing the defendant-company's policy, concluding that this evidence alone was sufficient to make the required

18

"modest factual showing." *Id.* at *4-6. In this case, however, Plaintiff has only information relating to her own experience, without the benefit of another case analyzing the same policy. Furthermore, the analysis in *Brooks* did not specifically discuss any showing related to the putative collective that may have violated the FLSA. Finally, to the extent that *Brooks*—an unpublished case from the district court—found that the Plaintiff's affidavit alone was sufficient to make a "modest factual showing" as to a policy's violation of the FLSA, this Court disagrees in this case. *See Flores*, 289 F. Supp. 2d at 1046.

Accordingly, and for the reasons stated above, the Court finds that the members of the putative collective action as described by Plaintiff are not similarly situated under 29 U.S.C. § 216(b), regardless of the standard applied. The Court therefore denies Plaintiff's Motion for certification of a collective action, conditional or otherwise. [Doc. No. 35.]

## II.     CERTIFICATION OF A CLASS ACTION UNDER RULE 23

In addition to his claims under the Fair Labor Standards Act, Plaintiff also seeks to certify a class action under Rule 23 of the Federal Rules of Civil Procedure for his claims under the IMWL and IWPCA based on the same showing. "To be certified as a class action, the putative class must first meet the four requirements of Federal Rule of Civil Procedure 23(a): numerosity, typicality, commonality, and adequacy." *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1059 (7th Cir. 2016). "In addition, the class must satisfy the requirements of one of the three alternatives

19

contained in Federal Rule of Civil Procedure 23(b)." *Id.* Plaintiff has sought certification under Rule 23(b)(3), and therefore "must also show: (1) that the questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members; and (2) that a class action is superior to other available methods of resolving the controversy." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).

It is Plaintiff's burden to show by a preponderance of the evidence that the proposed class satisfies the requirements of the rule. *Id.* at 811. "The Supreme Court has made clear that a class 'may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied' " because the Rule "serves the important function of protecting absent class members whose rights may be affected by the class certification," *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003) (quoting *Gen. Tele. Co. of the S.W. v. Falcon*, 457 U.S. 147, 160–61 (1982)), and the Court has discretion in determining whether certification is appropriate. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006).

Plaintiff's proposed class for his IMWL claim differs from his FLSA claim in that it is limited to Ferrara's Forest Park facility, but is broader in that it encompasses "[a]ll uniformed persons employed by Defendant Ferrara Candy Company . . . who worked more than forty (40) hours in any individual workweek, who were paid on an hourly basis, but who were not paid at the rate of one and one-half times their regular rate of pay for all overtime hours work." [Doc. No. 48 at 8.] The proposed class for the IWPCA claim is also limited to the Forest Park facility,

but encompasses "[a]ll uniformed persons employed by Defendant Ferrara Candy Company in Forest Park . . . who were paid on an hourly basis, but who were not paid for all time worked in individual workweeks." *Id.*

### 1. Rule 23(a)

Plaintiff relies on the same evidence underlying his claim for certification of a collective action under the FLSA in supporting his Motion under Rule 23. Similar to the analysis with respect to Plaintiff's request for certification of a collective action under the FLSA, the fact that Plaintiff has failed to submit any evidence relating to the claims of the putative class members renders certification of a class action under Rule 23 inappropriate.

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."[9]  In order to satisfy this requirement, "[t]he claims must depend upon a common contention that is capable of class-wide resolution," which "means that determining the truth or falsity of the common contention will resolve an issue that is central to the validity of each claim." *Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 434 (7th Cir. 2015) (citing *Wal–Mart Stores v. Dukes,* 564 U.S. 338, 350 (2011)). An analysis of the merits of Plaintiffs' claims is inappropriate at this stage. *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014). Whether the15-minute period of time paid for donning and doffing is sufficient to compensate for the compensable activities undertaken before and after the period for which Ferrara employees are "clocked in" is a question that

---

[9] Neither of the parties dispute that Plaintiff has satisfied the requirement of "numerosity," Fed. R. Civ. P. 23(a)(1), and the Court will forego that analysis.

would be common to the class. *See Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015). However, Plaintiff's class contains employees in numerous other departments with varying job responsibilities, but has failed to offer any evidence relating to these employees' routines. This mitigates against a finding of commonality. *See Maxwell v. Tyson Foods, Inc.*, No. 1:08CV00017-JAJ-TJS, 2012 WL 12541110, at *7 (S.D. Iowa July 19, 2012) (commonality not found because "Plaintiff is not capable of testifying as to the details of other employees' tasks, donning and doffing routines, etc.").

With respect to Rule 23(a)(3), a Plaintiff must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A named plaintiff's claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and her claims are based on the same legal theory." *Arreola v. Godinez*, 546 F.3d 788, 798 (7th Cir. 2008) (quoting *Oshana*, 472 F.3d at 514); *see also Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009). However, "[e]ven though some factual variations may not defeat typicality, the requirement is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large." *Arreola*, 546 F.3d at 798 (quoting *Oshana*, 472 F.3d at 514). While Plaintiff argues that the typicality requirement is met because his claims and those of the putative class all arise out "Ferrara's actions of expecting uniformed employees to work before their scheduled shifts without pay," and are based on the same legal theory [Doc. No. 48 at 12; Doc. No.

35-1 at 9-11], in this circumstance there is simply no evidence relating to the claims of other employees—who worked in different departments with different work requirements—and therefore no way for the Court to make this assessment.

Finally, under Rule 23(a)(4) a Plaintiff must also show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This adequate representation inquiry consists of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011). With respect to the first prong of the analysis, a "proposed class representative is inadequate if her interests are 'antagonistic or conflicting' with those of the other class representatives or the absent class members," if "she is subject to a defense not applicable to the class as a whole," or if her "claim is idiosyncratic or possibly unique . . . ." *Barnes v. Air Line Pilots Ass'n, Int'l*, 310 F.R.D. 551, 557 (N.D. Ill. 2015) (internal citations omitted) (summarizing cases) Although the Court does not find Plaintiff's interests to conflict with other class members in this case on the record presented, because of the extreme limitations of that record, assessing the individual nature of any defenses available to the putative class members is difficult, given the potential differences in job duties between employees in different divisions and the total lack of evidence relating to these employees' experiences.

The Court also has serious concerns regarding the adequacy of proposed class counsel in this case. *See* Fed. R. Civ. P. 23(g). In doing so, the Court considers the factors listed in Federal Rule of Civil Procedure 23(g)(1)(A), along with any other matter "pertinent to counsel's ability to fairly and adequately represent the interests of the class." *see Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489, 498 & n.7 (7th Cir. 2013) (citing Fed. R. Civ. P. 23(g)(1)(B)). With respect to "the work counsel has done in identifying or investigating potential claims in the action," Fed. R. Civ. P. 23(g)(1)(A)(i), the Court finds that there has been very little done to date in this case, despite its long history. As noted above, although discovery in this matter was open for more than one year, the evidence put forward by Plaintiff in support of his Motion is seriously deficient. Although a determination of the merits is not at issue at this stage, the quality of Plaintiff's briefing and evidence mustered in support raises serious concerns for the Court as to their ability to adequately represent the class and protect the interests of the absent members. *See Davis*, 321 F.3d at 649 ("The requirement that the district court conduct this "rigorous analysis," [under Rule 23(a),] among other things, serves the important function of protecting absent class members whose rights may be affected by the class certification.").

Plaintiff's counsel's conduct of the case to this point also raises concerns for the Court. *See Gomez*, 649 F.3d at 592 (citing with approval the district court's "conclusions regarding [counsel's] diligence, respect for judicial resources, and promptness" in denying certification under Rule 23). As discussed above, Plaintiff's

24

submission of the motion to extend the discovery deadline and submission of briefing for conditional certification under the FLSA, despite repeated representations that discovery would be complete and full certification motions forthcoming, combined with the lacking record put forth by Plaintiff to this point in the litigation at the conclusion of discovery, the litigation history in this case convinces the Court that Plaintiff's counsel is not adequate to protect the interests of absent class members in this case. And while Plaintiffs have maintained co-counsel who are more experienced in class action litigation, these attorneys appeared in the case as of November 2015, [Doc. Nos. 33 & 34], and have therefore been part of the conduct of the litigation to this point.

### 2. Rule 23(b)(3)

In this case, Plaintiff must also meet the requirements of Rule 23(b)(3), which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." "If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast Corp. v. Behrend*, __ U.S. __, 133 S. Ct. 1426, 1432 (2013). In determining whether the requirements of the rule have been met, the Court considers "the class members' interests in individually controlling the prosecution or defense of separate actions," "the extent and nature of any litigation concerning the controversy already begun by or against class members," "the

desirability or undesirability of concentrating the litigation of the claims in the particular forum," and "the likely difficulties in managing a class action." *Id.*

Plaintiff argues that class issues predominate over individual issues with regard to his claims because whether the members of the putative class were paid for hours worked in excess of 40 can be adjudicated on a class-wide basis based on Defendants' fifteen-minute pay policy, and individual variations among class members relate only to damages. [Doc. No. 48 at 13-14.] But, as discussed above, the only evidence produced by Plaintiff in support of his putative class as to any potential violation of the law is his own affidavit and deposition testimony. Plaintiff has not adduced any evidence—through testimony, affidavit, representative evidence, or otherwise—to support his theories of liability and damages with respect to the other class members, even though Plaintiff's counsel has had adequate time to do so, as discussed above.

With such little evidence as to the claims of the putative class members, the Court cannot conclude that issues common to the class predominate over those relating to class members individually. First, Plaintiff has failed to put forward any methodology or argument as to how the putative class will go about "establishing that damages are capable of measurement on a classwide basis. Without presenting [a] methodology, [he] cannot show Rule 23(b)(3) predominance: Questions of individual damage calculations will inevitably overwhelm questions common to the class." *Comcast*, 133 S. Ct. at 1433. Although "[t]he fact that the plaintiffs might require individualized relief or not share all questions in common does not preclude

certification of a class," Rule 23(b) nonetheless requires "common evidence and common methodology." *Bell*, 800 F.3d at 379. And the Seventh Circuit has made clear that the Court cannot simply "refus[e] to entertain arguments against respondents' damages model that [bear] on the propriety of class certification, simply because those arguments would also be pertinent to the merits determination." *Parko*, 739 F.3d at 1085 (quoting *Comcast*, 133 S.Ct. at 1432-33) (internal quotation marks omitted).

It is true that claims such as those made by Plaintiff in this case are often subject to treatment as a class where proper evidence shows that common issues of liability and damages can be treated representatively on a class-wide basis. *See Tyson Foods, Inc. v. Bouaphakeo*, __ U.S. __, 136 S. Ct. 1036, 1049 (2016). In such a case—with proper evidence and methodology—calculating liability damages arising from the claims at issue is "mechanical, formulaic, a task not for a trier of fact but for a computer program, so that there is no need for notice," which supports certification. *See Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 773 (7th Cir. 2013). However, "what can't support an inference about the work time of thousands of workers is evidence of the experience of a small, unrepresentative sample of them." *Id.* at 775. In this case, the experience of a single named Plaintiff is not sufficient to show that issues common to the class predominate.[10]

---

[10] Given that the Court finds that the common issues do not predominate in this case, it will forego determining whether the class action mechanism is a superior method for resolving Plaintiff's claims.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Conditional Certification [Doc. No. 35] is denied, and Plaintiff's Motion to certify a class action for his claims under the Illinois Minimum Wage Law and Illinois Wage Payment Collection Act, [Doc. No. 48] is also denied.


**SO ORDERED.**


**DATE:** _____ **August 19, 2016**

**HON. MARIA VALDEZ**

**United States Magistrate Judge**